Shauok, J.
The station house with its appropriate rooms and the platforms were obviously adapted to the use of the two roads in the interchange of traffic. They were so used. Passengers desiring to transfer from one road to the other were, therefore, invited to use them for that purpose. And this invitation implied an undertaking that the platforms were reasonably safe for that purpose. It follows that if the plaintiff had received his injuries while making his way with reasonable care to the ticket office or waiting room his right to recover would be entirely clear.
But he entered upon the platform with an intention previously formed not to use it for that purpose. Pursuing that intention he set out to use the platform and the track of the company as a way to reach the village a half mile distant, and having knowingly passed the ticket office and waiting rooms where employes would have provided him with a ticket and with information of the movement of trains, if he was not already informed, he had reached a point somewhat more than two hundred feet from the office when he received his injuries. The duties which the company owed him were such only as arose out of the relation to it which he had thus voluntarily assumed. ,It is said that the frequency with which the platform and track were *192 used by footmen as a way to pass from the vicinity of the junction to the village, and the long continuance of that use, raise a presumption that those who represented the company in charge of its ground had knowledge of the use, and that from acquiescence with knowledge, permission may be inferred. If this is conceded it will serve no further purpose than to place the plaintiff in the position of one so using the platform and grounds of the company by permission. But there is no ground for the contention that the company had invited the plaintiff and others to use the platform and track for the purpose which he had in view. It is quite true that the invitation to go upon the platform of a railway company is usually implied from the community of interest, that is, the interest of the traveler in being transported and of the carrier in transporting him. Here, however, was no community of interest. It is conceivable that the condition of the ways and commons gave to footmen an interest in so using the platform and track, but that the company was interested in having them so used is inconceivable. It is the subject of frequent observation that footmen use the bridges of railways for their convenience in the crossing of streams, but has it ever been heard that in consequence of such use railway companies become bound to cover the openings between the ties so as to make their bridges safe for the passage of footmen? No such obligation arises, for it is the settled rule upon the subject that one who enters upon the premises of another by mere sufferance and permission assumes the risks which arise from concomitant conditions. This proposition is established by the case of P., F. W. & C. R. R. Co. et al. v. Bingham, Admx., 29 Ohio St., 364, where Boynton, J., has *193 carefully analyzed numerous cases relating to the subject. Further discussion of it cannot be necessary.
But it is urged that in the circuit court it was thought, and rightly, that the judgment under review was required by the later case of Harriman v. Railway Co., 45 Ohio St., 11. Attention to the facts presented in the cases will show that in the legal view they are materially different. In the present case there has been a recovery because the end of the platform as it had been constructed six years before the accident and maintained without change, was not constructed or guarded so as to make it a safe way for footmen passing from the junction to the village, although such use was not within any invitation which the company extended to the public. While in Harriman v. Railway Co., the recovery was by one who was upon the grounds of the company by permission only, the injury was not occasioned by any real or alleged defect in the construction of the road. The injury there resulted from the operation of the road. The doctrine’ of the ease is that when the company became aware that persons were using the road for purposes of their own it became its duty, not to alter the construction of its road, but to operate it consistently with the facts thus known to it. It was held to be a violation of that duty to add new and further peril to such permitted use without taking precaution against injuries which would naturally result therefrom. Not only does such added peril from the operation of the road appear as a fact in the case, but in the syllabus it is stated as a ground of recovery; and in the opinion the question for decision is stated as follows: “An owner may, without protest or objection, permit his premises to be used by the public so long, in the same condition, that his acquiescence in the continuation of *194 such use, until some warning or notice on his' part, might reasonably be expected; and if under such circumstances and with knowledge of the same, he should place or leave some new, dangerous structure or instrument in the way so used, and from which he might reasonably apprehend danger of injury to those accustomed to such use, can he claim exoneration from liability in case such injury shall occur, on the ground that the law imposed no duty on him to keep his premises in a safe and suitable condition for trespassers and licensees who enter by permission only?” The case therefore recognizes the doctrine of the former case, which we follow here with approval. It follows that there was no evidence tending to show a default of the company in any duty which it owed to Aller, that the instruction given with respect to its duty was not applicable to the case, and the requested instruction upon that subject should have been given. If we had reached a different conclusion upon this question, very serious consideration would be due to the evidence in support of the company’s allegation that the injury to the plaintiff below was due to his own negligence, and to the instructions given and requested with respect to the subject of contributory negligence. But that subject need not be considered in view of our conclusion upon the first question. For the reasons stated we adhere to the judgment heretofore entered and announced reversing the judgments of the circuit and common pleas courts.
Burkbt, Spear and Davis, JJ., concur.